IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT A. EDWARDS,   :   NO. 2:09-cv-1070
   Petitioner   :
       :
 VS.      :
       :
PENNSYLVANIA BOARD OF PROBATION, :
AND  PAROLE, et al    :
   Respondents.   :

<u>REPORT AND RECOMMENDATION</u>

JACOB P. HART            July 24, 2009
UNITED STATES MAGISTRATE JUDGE

   Currently pending before this Court is a Petition for Writ of Habeas Corpus filed by a prisoner incarcerated in the State Correctional Institution at Graterford, Pennsylvania.  For the reasons which follow, it is recommended that the petition be denied.

I.  PROCEDURAL HISTORY

   After being convicted of first degree murder and aggravated robbery, on May 2, 1974, Edwards was sentenced by the Philadelphia Court of Common Pleas to life imprisonment without parole for first degree murder and to a concurrent term of 10 to 20 years for the robbery convictions. On April 12, 1984, the Governor of Pennsylvania commuted Edward's sentence from life without the possibility of parole to a term of 15 years to life, making him eligible for parole on February 21, 1988.  The commutation order provides as follows:

   I have commuted the sentence of life imprisonment of the said Robert A. Edwards
   from life imprisonment to the minimum term of 15 years to life expiring on February
   21, 1988 so that if he be released on parole in accordance with law he shall remain
   on parole the balance of his natural life unless returned to the correctional institution
   for violation of parole and that the sentence of imprisonment is hereby commuted

accordingly, so that he may be eligible for pre-release consideration at the discretion of the Bureau of Correction.

Exhibit 2.

On February 21, 1988, the expiration of Edwards' minimum sentence, the Pennsylvania Board of Probation and Parole (the "Board") released Edwards on parole from this sentence.  On March 6, 1989, Edwards was arrested for parole violations.  On June 29, 1989, the Board issued a decision recommitting Edwards as a technical parole violator for violating condition #2 of his parole (changing residence without permission).

On October 23, 1990, the Board once again released Edwards on parole from this sentence. While on parole this second time, on January 19, 1995, Edwards was arrested by federal authorities for new criminal charges.  On June 14, 1995, the United States District Court for the Western District of Virginia convicted Edwards of Executing Scheme to Defraud by Interstate Commerce Wire Communications (18 U.S.C. § 1343) and Criminal Forfeiture (18 U.S.C. § 1344) based on charges stemming from the January 19, 1995 arrest.  He was sentenced to a term of 30 months imprisonment for the new convictions.

Edwards was once again arrested by federal authorities on March 13, 1997.  On December 23, 1997, he was convicted by the United States District Court of the Eastern District of Pennsylvania of Conspiracy to Utter Counterfeit Checks and to Launder Money (18 U.S.C. § 371), Bank Fraud (18 U.S.C. § 1344) and eight counts of Money Laundering (18 U.S.C. § 1956(a)(1)(B)(I)) based on the charges stemming from the March 13, 1997 arrest.  He was sentenced to a term of 84 months imprisonment on these convictions.  On August 12, 2003, the Board sent Edwards a decision recommitting him to serve 24 months as a convicted parole violator based on

his new convictions.

Since being recommitted as a convicted parole violator, the Pennsylvania Board of Probation and Parole (the "Board") has reviewed and denied petitioner's application for parole four times. The decisions were recorded on June 28, 2005, August 31, 2006, May 19, 2008 and March 27, 2009.

The Board denied re parole on June 28, 2005, listing the following reasons:

Your lack of remorse for the offense(s) committed.
Your prior history of supervision failure(s).
Your interview with the hearing examiner and/or Board member.

The Board stated that Edwards would be interviewed again on or after June 2006, at which time the Board would consider whether he maintained a favorable recommendation for parole from the Department of Corrections, whether hew maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).  (Respondent's Exhibit 8).

In the next decision, dated August 31, 2006, the Board listed the following reasons for the denial:

Your minimization of the nature and circumstances of the offense(s) committed.
The negative recommendation made by the Department of Corrections.
Your prior supervision failure.
You will serve your unexpired maximum sentence of life.

(Respondent's Exhibit 9).  The decision did not indicate that he would be interviewed again.

However, the Board denied parole again on May 19, 2008, listing the following reasons for denying release:

Your minimization/denial of the nature and circumstances of the offenses(s) committed.
Your prior history of supervision failure(s)
Other factors deemed pertinent in determining that you should not be paroled: prior Board actions

3

The decision stated that he would be interviewed again on or after February 2009 and that they would next consider:  whether he had successfully completed a treatment program for: Thinking for a Change and Violence Prevention; whether he received a favorable recommendation for parole from the Department of Corrections' prescriptive program(s); and updated psychological evaluation and written version of original and all subsequent convictions to be available at time of review. (Respondent's Exhibit 10).

On March 27, 2009, the Board once again denied release, listing the following reasons:

The negative recommendation made by the Department of Corrections
Your minimization/denial of the nature and circumstances of the offenses(s) committed.

Respondent's Exhibit 11.  The Board further indicated that at petitioner's next review in March 2010, it would consider whether he received a favorable recommendation for parole from the Department of Corrections, whether he maintained a clear conduct record and whether he had completed the Department of Corrections' prescriptive program(s).  Id.

Edwards filed a Petition for Review in the Commonwealth Court, which the Court dismissed on August 21, 2007.  The Court found that the stated reasons in his most recent denial (August 31, 2006) were within the Board's discretion and that he did not state a violation of the Ex Post Facto Clause or demonstrate that the Board's actions actually or potentially increased his punishment. (Petitioner's Exhibit 1a).  On September 6, 2007, the Commonwealth Court issued an order, after consideration of correspondence from Edwards' which it treated as a request for reconsideration, denying the request.  (Petitioner's Exhibit 2a).  On April 30, 2008, the Pennsylvania Supreme Court affirmed the Commonwealth Court's order of August 21, 2007.  (Petitioner's Exhibit).  Finally, on July 10, 2008, the Pennsylvania Supreme Court denied Edwards' application for re argument.

Edwards submitted the instant Petition for Writ of Habeas Corpus on March 10, 2009, raising the following claims:  (1) due process violation because indeterminate life sentence is a misnomer in Pennsylvania for purpose of life imprisonment; (2)  that Ex Post Facto Clause should prevent the Board from changing the nature of punishment as being now an indeterminate life sentence for punishment undefined;  (3) that he has been punished twice for the same crimes in violation of double jeopardy because he was convicted to life without parole, sentence was commuted to lifetime parole and then he was re sentenced to life imprisonment indeterminate standards undefined; and (4) violation of separation of powers- Board lacked authority to re sentence and interfere with the Governor's power to grant commutation of sentence .  Having considered the opposing arguments, the Court now turns to a discussion of these issues.

## II.     FAILURE TO EXHAUST STATE COURT REMEDIES

Respondents argue that petitioner's claim of an ex post facto violation has not been exhausted and, thus, at a minimum, the habeas petition should be dismissed without prejudice as a mixed petition.  While we find merit to this contention, we decline to dismiss the petition on exhaustion grounds.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  A petitioner is not deemed to have exhausted the remedies available to him if he "has the right under state law to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059.  In other words, a petitioner must invoke "one complete round of the State's established appellate review process," in order to exhaust remedies.  O'Sullivan, 526 U.S. at 845.  A habeas petitioner retains the burden of showing

5

that all of the claims alleged have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts.  Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982).  In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise, they risk depriving the state courts of the "opportunity to correct their own errors, if any."  Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).  Where, however, there is an absence of available state corrective process, the exhaustion requirement is satisfied.  Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000), cert. denied, 531 U.S. 1082, 121 S. Ct. 785 (2001).

With respect to parole decisions, the Pennsylvania Supreme Court has held that a mere denial of parole, under Pennsylvania law, affects no constitutionally protected liberty interest and, thus, a discretionary Parole Board action of denying release is not an adjudication by an agency subject to state judicial review.  Rogers v. Pennsylvania Board of Probation and Parole, 724 A.2d 319, 322-323 (Pa. 1999).  On the other hand, it has noted that while "appellants are not entitled to appellate review of a Parole Board decision, they may be entitled to pursue allegations of constitutional violations against the Parole Board through a writ of *mandamus*." Id. at 323, n. 5.  "*Mandamus* is an extraordinary remedy which is available to compel the Parole Board to conduct a hearing or to apply the correct law."  Id.  In a subsequent decision, the state Supreme Court expressly held that the issue of whether a statute relied upon by the Board in making its decision violated the Ex Post Facto Clause may be raised in state court by way of a petition for writ of mandamus.  Coady v. Vaughn, 770 A.2d 287, 290 (Pa. 2001).  The Third Circuit has read the state court's holding in Coady narrowly and has only required exhaustion for ex post facto claims, not other constitutional issues.  Defoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005) (holding that other than ex post facto

claims, "claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion."); see also Benchoff v. Colleran, 404 F.3d 812, 819 (3d Cir.2005) ("Pennsylvania petitioners are not obligated to file either a writ of mandamus or a writ of habeas corpus before challenging parole denial on non-ex post facto grounds ....").

Under this jurisprudence, we find Edwards' claim regarding the Ex Post Facto Clause to be unexhausted. Although the petition seems to challenge all of his parole denials, the Court construes his pleadings as contesting his latest parole denial of March 27, 2009. Any alleged problems with the prior decisions are now moot, in light of the fact that constitutional violations in those earlier hearings would be remedied by our ordering a new review by the Board. As petitioner has already received another parole review in March 2009, that latest decision is the only one ripe for consideration. This claim, however, was never raised in state court. His sole petition for mandamus was filed in state court on July 9, 2002, significantly prior to this latest parole decision and, consequently, could not have been raising problems in that decision. Under the mandate of the United States Supreme Court in O'Sullivan, this claim remains unexhausted.

Edwards now claims in his Traverse that he was unaware of the March 2009 parole denial because he was not given "proper notice." He claims, however, that after review of the decision his claims would be the same. Although we could dismiss this case without prejudice and instruct petitioner to return to the state courts, we will not do so. Pursuant to 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Id. A petition containing an unexhausted claim, however, should not be denied on the merits unless "it is perfectly clear that

the applicant does not raise even a colorable federal claim." Lambert v. Blackwell, 134 F.3d 506, 514-515 (3d Cir. 1998) (quoting Granberry v. Greer, 481 U.S. 129, 135, 107 S. Ct. 1671 (1987)). As set forth at length below, we find no substantive merit to Edwards' claims and, accordingly, shall dismiss this matter in its entirety.

III.    MERITS

      A.    Due Process

      Under Pennsylvania law, the Board of Probation and Parole has wide discretion in granting parole.  "A prisoner has no constitutional protected liberty interest in the expectation of being released from the confinement prior to the expiration of the maximum term of the imposed sentence." Commonwealth v. Stark, 698 A.2d 1327, 1333 (Pa. Super. Ct.1997).  The denial of parole itself cannot constitute a procedural due process violation inasmuch as there is no federal liberty interest in parole release.  See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7-10, 99 S. Ct. 2100, 2104-2105 ( 1979); Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996).  However, a parole denial can give rise to a due process deprivation if it is based on constitutionally impermissible reasons.  Id. at 139-140.  The Board may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth.  Id. (citing Block v. Potter, 631 F.2d 236 (3d Cir. 1980)).  "Essentially, the duty of the parole board when reviewing applications for parole is to act in a manner that avoids making the parole process arbitrary, even though the granting of parole is a discretionary matter under § 331.21 of the Pennsylvania Parole Act." Hargrove v. Pennsylvania Board of Probation and Parole, Civ. No 99-1910, 1999 WL 817722, *7 (E.D. Pa. Oct. 12, 1999).  Federal courts, however, "are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is

some basis for the challenged decision."  Coady v. Vaughn, 251 F.3d 480,  487 (3d Cir. 2001).

In this case, the Board's March 27, 2009 decision denying re parole states that he was denied parole on the following basis:

> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF
> CORRECTIONS.
> YOUR MINIMIZATION OF THE NATURE AND CIRCUMSTANCES OF THE
> OFFENSES(S) COMMITTED.

We agree with Respondents that the reasons cited by the Board are based on factors the Board was required to consider.  Edwards' conclusory allegation that he was denied parole on the basis of an alleged Board policy to deny parole to prisoners with commuted life sentences does not entitle him to habeas relief.  There is no basis upon which to believe that Edwards was denied parole because of any of the impermissible factors identified by the Third Circuit in Block.  The Third Circuit has held in Coady that "federal courts are not authorized to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady, 251 F.3d at 487.  In light of the explanations offered in this case, we find that a basis for the challenged decisions does exist.

B.      Ex Post Facto Claim

Petitioner's second challenge to his parole denial invokes the Ex Post Facto Clause of the United States Constitution.  U.S. CONST. Art. 1, § 10.  The petitioner claims that the Board has adopted an "unofficial policy to employ indeterminate life imprisonment", which has been improperly used as a basis for his parole denials in violation of the Ex Post Facto Clause.  Upon consideration of particular facts in the case before us, the Court must disagree.

The Ex Post Facto Clause of the United States Constitution applies to a statutory or policy change that "retroactively alter[s] the definition of crime or increase[s] the punishment for criminal acts." California Dep't of Corrections v. Morales, 514 U.S. 499, 505, 115 S. Ct. 1597, 1601 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990)).  In order for a new law to violate the Ex Post Facto Clause, a petitioner must prove two elements.  First, it must be retrospective, in that it "appl[ies] to events occurring before its enactment." Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 965 (1981); see also Coady v. Vaughn, 251 F.3d at 488.  Second, the new law must "disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981); Coady, 251 F.3d at 488.  Therefore, if the statutory change does not prejudicially affect the substantive rights of the parties and is merely procedural or remedial in nature, it does not offend the ex post facto prohibition.  See Dobbert v. Florida, 432 U.S. 282, 293, 97 S. Ct. 2290, 2298 (1977)("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto.").

In the case at bar, the "new law" challenged by petitioner comes in the form of an alleged policy to deny re parole to prisoners with life sentences which have been commuted after being recommitted as a parole violator.  He relies on the language in his denial of parole recorded on August 31, 2006, which stated that his parole violation maximum date was life and that he would serve his unexpired life sentence.

We do not find the Advisory Committee study, which he sought to admit by way of his Motion for Leave to Deposit with the Court (addressed below) or the language in his parole determination of August 31, 2006, or in his other determinations, to be evidence of any official or unofficial policy.  The fact remains that the maximum date for a sentence of 15 years to life is life.

10

As to the statement that he would serve the remainder of his sentence, rather than listing a date for his next interview, this decision is now moot.  Edwards has in fact, been interviewed and denied parole twice since that denial.  As stated above, the August 31, 2006 denial is moot.  In the latest denial, the Board has indicated the next date for review.

There is no evidence that such a policy exists.  The Respondent has submitted an Affidavit from Cynthia L. Daub, Board Secretary, in which she has states that "the Board does not have a policy, written or unwritten, that states inmates with commuted life sentences must or should be refused parole."  She specifically states that "Mr. Edwards was not refused parole as result of any written or unwritten policy requiring the Board to refuse parole to inmates with commuted life sentences." (Respondent's Exhibit 1).  Most significantly, Edwards himself has been granted parole twice, contrary to this alleged policy.  He was granted parole at the expiration of his 15 year minimum term and then again after being recommitted.[1]  He has also been listed for another review on or after March 2010.  Accordingly, we must deny Edwards' claim of an Ex Post Facto Clause violation, as he has not established that there is such a policy or that the policy has worked to his disadvantage because it was the basis for his denial of parole.

C.     Double Jeopardy

In his next claim, Edwards argues that he has been sentenced twice for the same crime, in violation of double jeopardy.  He claims that he was sentenced to life without parole, that his sentence was commuted to lifetime parole, and he was then re-sentenced to life imprisonment

---

1.  In his traverse, Edwards responds to the argument that his own history of being granted parole is evidence that such a policy does not exist, by asserting that although the policy was in effect when he was re paroled in October 1990, "it only took form in isolated parole violation situations."  (Traverse at p. 10).  He asserts that "[m]ovant Isaac James has been incarcerated over 26 years for violating his commuted lifetime parole supervision..."  (Id.).  We are not persuaded by this argument and do not find this to be proof of the existence of the alleged policy.

indeterminate standards undefined.

The Fifth Amendment of the United States Constitution states, in part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . ." U.S. CONST. Amend. V.  The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.  See Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 769 n.1, 114 S. Ct. 1937, 1939 n.1 (1994) citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969) (overruled and superseded by statute on other grounds).  Where, however, there is "no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended."  United States v. Wilson, 420 U.S. 332, 344, 95 S. Ct. 1013, 1022 (1975).

In making its decisions, the Board of Probation and Parole does not increase or decrease punishment; it merely determines when circumstances are appropriate for convicted persons to serve their sentences without continued physical custody.  61 P.S. § 331.17.  "Parole does not withdraw the original sentence, but changes the locale and conditions under which that sentence will be served."  United States ex rel. McClure v. Patton, 624 F. Supp. 56, 60 (E.D. Pa. 1985).  As such, "[i]t is well-settled that jeopardy does not attach at parole hearings."  Jubilee v. Horn, 959 F. Supp. 276, 279 n.4 (E.D. Pa. 1997) (citing Morrissey v. Brewer, 408 U.S. 471, 478, 92 S. Ct. 2593, 2598-99 (1972); U.S. v. McGowan, 960 F.2d 716, 718 (8th Cir. 1992) ("A decision to delay a defendant's probable release date . . . is an administrative decision and not a criminal prosecution."); Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986)(the Double Jeopardy Clause does not apply to vacation of a presumptive parole release date)); see also United States ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970).

12

Edwards claims he was essentially re sentenced to life imprisonment after his sentence was commuted to lifetime parole.  However, his commuted sentence was a minimum term of fifteen years to life with lifetime parole to a maximum of life.  As the Pennsylvania Commonwealth Court has noted, "[t]he sentence imposed for a criminal offense is the maximum term.  The minimum term merely sets the date prior to which a prisoner may not be paroled."  Gundy v. Pennsylvania Board of Probation and Parole, 478 A.2d 139, 141 (Pa. Commw. 1984).  Therefore, requiring him to complete the maximum sentence in no way increases his punishment and certainly does not present any violation of the Double Jeopardy Clause.  Accordingly, even if Edwards is required to complete his life sentence, there would be no violation of the double jeopardy clause.

       D.     Separation of Powers

In his final claim, Edwards claims that the Board interfered with the Governor's power to grant commutation,  in violation of the separation of powers.  The doctrine of Separation of Powers is based upon the fact that the U.S. Constitution establishes three separate branches of government: (1) the judicial branch, (2) executive branch and (3) legislative branch, giving each separate powers. See I.N.S. v. Chadha, 462 U.S. 919, 951, 103 S. Ct. 2764 (1983).   The Constitution established a system of checks and balances between the three branches which the Framers believed would protect individual liberty. Id.  at 998.  "Thus, the Separation of powers doctrine helps prevent the erosion of governmental "checks and balances" by preventing the three branches of government from usurping and/or intruding upon the other's power and domain." Turner v. U.S., Civ. A. No. 07-4848, 2008 WL 4671709, *5 (E.D. Pa. Oct. 20, 2008).

In Pennsylvania, prisoners condemned to death or serving life imprisonment may not be released on parole except when the Board of Pardons has recommended commutation of sentence

and the Governor approves the commutation. 61 P.S. § 331.21(a).  The Governor's power of commutation is derived from the Pennsylvania Constitution.   See Pa. Const. art. 4, § 9(a).  Under Article 4 Section 9 of the Constitution of Pennsylvania, the Governor has the power to commute sentences "[i]n *all* criminal cases except impeachment." Pa. Const. art. 4, § 9(a);  Shaw v. Vaughn, Civ. A. No. 89-6265, 1989 WL 140490, *1 (E.D. Pa. Nov. 17, 1989); Commonwealth v. Sutley, 378 A.2d 780, 789 n. 12 (Pa 1977) ("the power of commutation is an adjunct of the pardoning power"). After the sentence has been commuted to a minimum term of years, at the expiration of the minimum term the Board may grant parole.  See Meyers v. Gillis, 93 F.3d 1147, 1154 -1155 (3d Cir.1996) (providing a summary of this practice quoted from the dissent of a state court opinion[2]).

Edwards argues that the Board's alleged policy to deny parole usurps the Governor's power of commutation in violation of the separation of powers.  As Respondents correctly argue, this claim must be denied for multiple reasons.

First, this is an issue of state law, which is not cognizable on habeas review.  "[A]s a general rule, the separation of powers between the branches of state government does not implicate federal

---

2.  "Judge Cirillo's dissenting opinion in Commonwealth v. Gillespie, 333 Pa. Super. 576, 482 A.2d 1023, 1032-33 n. 2 (1984), reversed on other grounds, 512 Pa. 349, 516 A.2d 1180 (1986), provides a summary of this practice:

> Before a life prisoner may be paroled the Governor must commute his minimum sentence to a term of years.

> This the Governor may do only on the recommendation of the Board of Pardons. Pa. Const. art. 4, § 9; The Administrative Code of 1929, § 909, as amended by Act of July 31, 1968, P.L. 769, No. 240, art. VI, § 609(8), 71 P.S. § 299. Next, after expiration of the term of years as commuted, the Board of Parole must exercise its discretion whether to parole the prisoner, subject, however, to the authority of the Board of Pardons to order parole if the Board of Parole does not. Act of Aug. 6, 1941, P.L. 861, § 21, as amended, 61 P.S. § 331.21. Of course, in deciding whether to grant parole the Parole Board must consider any recommendations made by the judge who heard the case and who may even have imposed the original sentence. But the final decision on how much time a life prisoner will serve remains purely an administrative matter."

Meyers v. Gillis, 93 F.3d 1147, 1154 -1155 (3d Cir. 996) (quoting  Commonwealth v. Gillespie, 333 Pa. Super. 576, 482 A.2d 1023, 1032-33 n. 2 (1984) (Cirillo, J. dissenting), reversed on other grounds, 512 Pa. 349, 516 A.2d 1180 (1986)) .

constitutional issues, only issues of state law." Hopkins v. Deloy, 600 F. Supp. 2d 591, 598 (D. Del. 2009) (citing Whalen v. United States, 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432 (1980) (explaining that the "doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the states."); Colorado General Assembly v. Salazar, 541 U.S. 1093, 1095, 124 S. Ct. 2228 (2004)(dissent)). It is well settled that state-law violations provide no basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991); Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871 (1984). Accordingly, Edwards' argument fails to present an issue cognizable on federal habeas review.

Furthermore, as set forth above, Edwards has not presented any evidence of the Board's alleged policy to automatically deny parole to prisoners with commuted life sentences. The Board has specifically denied that any such written or unwritten policy exists. As previously discussed, Edwards' own history of being granted re parole after being recommitted contradicts this alleged policy.

In addition, as Respondents argue, even addressing this claim, there can be no violation of the separation of powers, as both the Governor and the Board are a part of the executive branch. See Pennsylvania Prison Soc. v. Cortes, 508 F.3d 156, 159 (3d Cir. 2007) ("Like Article II of the U.S. Constitution, Article IV of the Pennsylvania Constitution delineates powers of the executive branch"); Commonwealth v. Sutley, 378 A.2d 780 (Pa. 1977) (holding that a separation of powers claim under the Pennsylvania Constitution is present where one branch of the government encroaches on another branch's authority).

Finally, Edwards has not demonstrated that the Board exceeded its authority by encroaching upon the Governor's commutation power. The commutation order specifically provides that "if he

15

be released on parole in accordance with the law he shall remain on parole the balance of his natural life *unless returned to the correctional institution for violation of parole*...."   Respondents accurately note that the commutation order does not provide that he will serve a sentence of lifetime parole even if he violates his parole.  It does not provide that he cannot be recommitted or that if he is recommitted that he must be re paroled.  In his traverse, Edwards seems to argue that the Board has exceeded its authority by sentencing him to a sentence beyond the maximum imposed by the commutation.  (Traverse at 18-19).  This is incorrect.  As previously stated, the maximum sentence, pursuant to the commutation order is life.  The minimum term imposed was 15 years with lifetime parole with a maximum of life. The commutation merely imposed a minimum term of 15 years, allowing the Board to grant parole after that time.  It did not alter the maximum sentence of life.  The Board has acted within its own discretion in denying re parole.  This claim must be denied.

IV.    PENDING MOTIONS:

There are multiple motions pending in this case.  For the reasons that follow, we recommend that Edwards' Petition to Supplement his Memorandum of Law be granted and all remaining motions be denied.

A.    Petition to Supplement Memorandum of Law in Support of habeas Corpus Application (Doc. No. 2):

First, on March 27, 2009, Edwards filed a Petition to Supplement Memorandum of Law in Support of Habeas Corpus Application (Doc. No. 2), along with a supplemental memo (Doc. No. 3).   As this was filed before the case was referred to the undersigned and before an Answer was ordered in this matter, we considered the supplemental filing and recommend that the petition be granted.

B.    Motion to Intervene as Petitioners (Doc. No. 4):

First, prior to the petition being referred to the undersigned for this Report and Recommendation, three additional inmates, Spencer Broaddus, Louis C. Mickens-Thomas, and Isaac James, filed a Motion to Intervene as petitioners.  They assert that they wish only to intervene as to questions of law and adopt Edwards' claims in their entirety.  The inmates previously jointly sought relief in state court by filing a Writ of Prohibition, which was denied.  They assert that they are similarly situated commuted lifetime parole violators that are in custody in violation of the Constitution or laws or treaties of the United States, pursuant to 28 U.S.C. 2241.

As noted by Respondent, the motion is not signed by Louis C. Mickens-Thomas or his counsel.  He must therefore be dismissed from the motion.

The movants are not entitled to intervention of right pursuant to Rule 24(a).  Pursuant to Rule 24(a)(1) the court must allow intervention to anyone who "is given an unconditional right to intervene by federal statute."  Clearly, there is no such statute in this case.  Pursuant to Rule 24(a)(2), the parties must establish (1) an interest in the subject matter of the pending litigation; (2) a substantial risk that the litigation will impair the interest; and (3) the existing party does not adequately protect that interest.  Harris v. Reeves, 946 F.2d 214 (3d Cir. 1991).  While the movants have alleged an interest in the subject matter, they have not even asserted a risk that the litigation will impair their interest or that Edwards does not adequately protect their interest.

Under Rule 24(b)(1), permissive intervention, the court may grant intervention to anyone who (a) has a conditional right to intervene by federal statute or (b) has a claim or defense that shares with the main action a common question of law or fact.  Here, there is no federal statute giving the movants a conditional right to intervene.  Furthermore, as Respondents argue, they have not

17

sufficiently pleaded a common question of law or fact.  The motion does not include a pleading, as required by Rule 24(c).  Instead, the movants simply state that they adopt Edwards' petition.  The only facts which are provided are that the movants are also lifetime parole violators who have been recommitted.  We therefore, recommend that the motion to intervene be denied.  If the movants wish to challenge their own parole denials, they should do so separately.

C.       Motion for Relief of Prior Judgments Pursuant to Rule 60(b) (Doc. No. 7):

Edwards has filed a Motion for Relief of Prior Judgments Pursuant to Federal Rule of Civil Procedure 60(b).  He appears to be asking that the Court vacate his prior habeas judgments and entertain those petitions once again.  His basis for doing so is an allegation of fraud upon the court. He asserts that "Indeterminate life is a fabrication, intentional, by officer of the court, and briefed it as being consistent with statute as well of an error of law arising on the face of the proceedings, or apparent on the judgment record."

While it is difficult to understand his argument, we presume that the "fabrication" and "fraud on the court" to which he is referring is the alleged policy of the Board, under which they use pretextual reasons to automatically deny parole.  This is part of his claim in his pending habeas petition, which is not a successive petition, as it relates to a parole denial decision which post dates the prior petitions.  He has not been precluded from raising his claim.  There is certainly no basis to reopen his prior habeas petitions.  This motion must be denied.

D.       Motion to Expand Record (Doc. No. 8):

Edwards also seeks to expand the record to include state court docket entries.  He has not provided copies of the docket entries he wishes to include in this record.  As I find the record sufficient to address Edwards' claims, I recommend that the motion be denied.

18

E.   <u>Motion for Leave to Deposit in Court Evidence of Limited Public Records (Doc. No. 10)</u>:

Next, Edwards has filed a motion pursuant to Fed. R. Civ. P. 67(a), seeking to deposit a public record with the Court.  He seeks to deposit and authenticate a "Report of the Advisory Committee on Geriatric and Seriously Ill Inmates", a report prepared in 2005 by the Joint State Government Commission pursuant to 2002 Senate Concurrent Resolution No. 149.  Rule 67(a) provides that "[i]f any part of the relief sought is a money judgment or the disposition of money or some other deliverable thing, a party- on notice to every other party and by leave of court- may deposit with the court all or part of the money or thing, whether or not that party claims any of it..."  This Rule clearly is not relevant to Edwards' attempt to submit this report as evidence to his habeas petition.  We also do not find the Report to be relevant to Edwards' claims.  He seems to argue that the Report is evidence of the alleged policy of the Board.  However, upon review of the cited portions, we do not find it to be at all relevant.  We therefore, recommend that this motion also be denied.

F.   <u>Motion for Appointment of Counsel (Doc. No. 10)</u>:

Finally, Edwards seeks to have counsel appointed to represent him and the parties seeking to intervene.  As Respondent notes, there is no automatic right to counsel in a habeas proceeding.  <u>Reese v. Fulcomer</u>, 946 F.2d 247 (3d Cir. 1991).  Counsel is to be appointed where the Court "determines that the interests of justice so require."  <u>Id</u>.  We do not find that the appointment of counsel is necessary in this case and recommend that the motion be denied.

Therefore, I make the following:

<u>RECOMMENDATION</u>

AND NOW, this 24th day of *July*, 2009, it is RESPECTFULLY RECOMMENDED that Edwards' Petition to Supplement Memorandum of Law (document #2) be GRANTED; all other pending motions in this case (document #s 4, 7, 8, 9 and 10) be DENIED; and the Petition for Writ of Habeas Corpus be DISMISSED.  There is no probable cause to issue a certificate of appealability. The petitioner may file objections to this Report and Recommendation.  See  Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/***Jacob P. Hart***

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT A. EDWARDS,                    :          NO. 2:09-cv-1070
                    Petitioner       :
                                      :
        VS.                           :
                                      :
PENNSYLVANIA BOARD OF PROBATION,      :
AND   PAROLE, et al                   :
                    Respondents.     :

## **O R D E R**

EDMUND V. LUDWIG, J.,

     AND NOW, this                    day of                    , 2009, upon careful and

independent consideration of the petition for writ of habeas corpus, and after review of the Report

and Recommendation of United States Magistrate Judge Jacob P. Hart, IT IS ORDERED that:

     1.  The Report and Recommendation is APPROVED and ADOPTED.

     2.  Edwards' Petition to Supplement Memorandum of Law (document #2) is GRANTED;

     3.  All other pending motions in this case (document #s 4, 7, 8, 9 and 10) are DENIED.

     3.  The petition for a writ of habeas corpus is DISMISSED.

     3.  There is <u>no</u> basis for the issuance of a certificate of appealability.

                                        _____
                                        EDMUND V. LUDWIG, J.